JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Wayne Ivory guilty of two counts of felonious assault in connection with his participation in a drive-by shooting that occurred at an occupied residence. In this appeal, Ivory maintains that the state failed to produce sufficient evidence of the charges, that counsel performed ineffectively, and that the state failed to disclose evidence.
 {¶ 2} The state established that Ivory and the testifying victim had been acquaintances, if not friends, for years. At some point, Ivory began to give the victim a hard time whenever he saw him, ultimately challenging the victim to a fight every time their paths crossed. On the day of the offense, the victim and his wife were at a gas station and saw Ivory. Ivory began thumping his chest, apparently as a means of intimidation. The victim left the gas station, and Ivory followed the victim in his car for awhile before turning off.
 {¶ 3} The victim returned to his house and a short while later, while speaking with his neighbor, saw Ivory and Ivory's brother drive by. Ivory told the victim he would "F you up. * * * We gonna get you. I'll be back." Ivory left and returned to the victim's house a second time. The victim could not say if Ivory was alone in the vehicle because he saw Ivory leaning out of the passenger window. Ivory went on his way, only to return a third time. On his third visit to the victim's house, Ivory held an "automatic" gun outside the window and shot in the direction of the victim and the neighbor. The bullet struck the back of a van sitting in the victim's driveway. Ivory's vehicle moved a short way down the street and then the gun fired a second time.
 {¶ 4} A police officer testified that on the day of the shooting, Ivory walked into the police station and reported that the victim had accosted him at a gas station and fired several shots at him. The police went to the gas station but, given the transient flow of customers at a gas station, thought it would be fruitless to ask those present about an incident that occurred several hours previously. They searched the area for shell casings, but could not find any. There were no other reports to the police that shots had been fired at the gas station. Later that day, the police received a call about shots being fired at the victim. Thinking there might be a connection between the two incidents, the police went to question Ivory. It turned out that Ivory had earlier given the police an incorrect address when he first accused the victim of shooting at him. When the officers ran a check on the license plate number that the victim said belonged to Ivory, they received Ivory's address. They went to that address and knocked on the door for several minutes before Ivory's girlfriend opened the door. The girlfriend said that Ivory was not home, but the officers heard a door slam in the back of the house. Ivory eventually reappeared and the police arrested him.
 I {¶ 5} The jury found Ivory guilty of two counts of felonious assault: one count against the victim and another against the neighbor. The victim testified, but the neighbor did not. Ivory maintains that the state failed to present any proof that the neighbor was in the line of fire so as to show that he acted with the requisite intent to harm the neighbor.
 {¶ 6} R.C. 2903.11(A)(2) states that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance. In State v.Jordan (Nov. 25, 1998), Cuyahoga App. No. 73364, we said that "[f]iring a gun in a person's direction is sufficient evidence of felonious assault. Even firing a weapon randomly at victims arguably within range of the shooter is sufficient to demonstrate actual intent to cause physical harm. State v. Phillips (1991),75 Ohio App.3d 785; State v. Owens (1996),112 Ohio App.3d 334."
 {¶ 7} There are cases, however, that suggests that the intent to commit a felonious assault by shooting at a person does not exist when the victim is not in the "line of fire." For example, in State v. Mills (1992), 62 Ohio St.3d 357, 369, Mills had been accused of committing several felonious assaults during the commission of a bank robbery. The Supreme Court vacated one of those counts against a teller who was standing off to the side of the line of fire and behind a teller counter.
 {¶ 8} The key factual distinction between Mills and this case is the proximity of the shooter to the victim and how that proximity demonstrates an intent to hit a desired target. If a shooter fires a shot at a target standing within point-blank range, it can be inferred that the shooter intends to hit that target to the exclusion of other targets within the periphery. When, as here, the targets are considerably farther away, and aiming is made more difficult because the shooter is in a moving vehicle, it can reasonably be inferred that the shooter is intending to shoot within a much wider target range. Hence, anyone standing within that wider target range can be an intended target, regardless of whether the shooter hits the mark. Of course, the greater the range and difficulty of the shot, the less likely it may be that a bullet will hit its intended target. But that fact alone does not overcome an intent to hit a target — it simply makes a successful shot that much more unlikely.
 {¶ 9} The evidence showed that Ivory fired twice in a drive-by shooting. Although one of the police officers thought that the neighbor had not been in the line of fire, the victim testified that he pulled the neighbor out of the way when he heard the gunshots. As there is no question that the victim had been in the line of fire, the neighbor's proximity to the victim meant that he, too, must have been in the same line of fire. In any event, the standard of review for sufficiency of the evidence requires us to examine the evidence in a light most favorable to the state. State v. Goff (1998), 82 Ohio St.3d 123, 128,1998-Ohio-369. Thus, any possible conflicts in the evidence must be construed in favor of the victim's testimony over that of the police officer.
 {¶ 10} Finally, Ivory argues that his conviction could not be sustained against the neighbor because the neighbor did not testify at trial. We find that the victim's testimony adequately set forth a factual basis for finding that Ivory intended to shoot both of them; consequently, the absence of testimony from the neighbor was not fatal to the second count of felonious assault.
 II {¶ 11} Ivory next argues that the verdicts were against the manifest weight of the evidence because of a number of inconsistencies between the testimony of the victim and his wife.
 {¶ 12} We need not belabor the differences in testimony between the victim and his wife since they both agreed on the fundamental points: they readily identified Ivory and both saw him fire the shots. The inconsistencies raised by Ivory (for example, Ivory's alleged position inside the vehicle, whether there was another person in Ivory's vehicle, and the color of Ivory's vehicle) were not nearly important enough for us to disregard those matters on which the two testified consistently. The jury heard the testimony and any alleged inconsistencies. Its verdict necessarily means that the jury found these inconsistencies were not significant enough to cast doubt on the facts. At any rate, we see no facts so inconsistent that we believe they cast doubt on the entire verdict. State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 III {¶ 13} Ivory did not testify, but his grandmother did. During direct examination, defense counsel asked her to tell the jury about him. She answered, "[h]e is not a violent person." On cross-examination, the state referenced that response and asked her whether she was aware that Ivory had a prior weapons conviction. When defense counsel objected to the question, the court stated, "You opened the door. I couldn't believe it." Ivory now claims that he received ineffective assistance of counsel because defense counsel opened the door to the prior conviction, even though he decided not to testify in order to keep the prior conviction out of the jury's hearing.
 {¶ 14} To prove a claim of ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, citing Strickland, 466 U.S. at 694.
 {¶ 15} During direct examination, witnesses are often asked open-ended questions. Open-ended questions to witnesses are often desirable if the witness communicates well and can establish a connection with the trier of fact. The downside to open-ended questions on direct examination is that such questions can result in non-responsive or damaging answers given under the pressure of testifying. Even the best-prepared witness may give an unexpected answer.
 {¶ 16} When defense counsel asked the grandmother to "tell the ladies and gentlemen of the jury a little bit about your grandson," she left her client open to whatever response that might have been forthcoming from the grandmother. When the grandmother replied, "he's not a violent person," that response opened the door for the state to rebut that statement. Once an accused puts evidence of his good moral character or his non-violent character in issue, the prosecution may offer evidence to rebut the accused's "good" character evidence. See Evid.R. 404(A)(1); State v. Finnerty (1989), 45 Ohio St.3d 104,108.
 {¶ 17} We do not know what prompted the grandmother to say that Ivory was not a violent person. Certainly, any question which asks a witness to "tell us a little bit" about someone will arguably result in an answer that brings character into evidence, so it may be that the grandmother's answer was a natural response under the circumstances, regardless of how well-prepared she was as a witness. Given these circumstances, we do not see that defense counsel's open-ended question to the grandmother could have been part of a broader trial strategy, so we therefore agree with Ivory that counsel acted deficiently by asking the grandmother a question that would have inevitably opened the door to evidence of his character.
 {¶ 18} A showing that counsel acted deficiently is only half of the ineffective assistance of counsel equation: Ivory must show by a reasonable probability that but for the error the result of trial would have been different.
 {¶ 19} There is no reasonable probability that the result of trial would have been different had the grandmother not been asked a question whose answer permitted the state to inquire about a prior weapons conviction. Regardless of Ivory's criminal past, the state presented a strong case to support the convictions. While Ivory's story that the victim shot at him could not be corroborated, the police were able to confirm that a shooting occurred at the victim's house with evidence of a bullet hole and a spent bullet casing. Two witnesses for the state confirmed the bad blood between Ivory and the victim, and niggling inconsistencies aside, those witnesses gave very similar testimony about the shooting. The strength of this evidence is such that Ivory cannot show a "reasonable probability" that the result of trial would have been different had the jury not learned about his prior conviction.
 IV {¶ 20} Just before the start of trial, it became clear that the defense had no idea that a bullet casing had been found at the scene of the shooting. The state admitted that it failed to include the bullet casing in its discovery, but argued that the admission of the casing would not prejudice the defense since the state could not match the casing to a gun used by Ivory. Moreover, the state argued that any discovery violation was immaterial in light of Ivory's alibi defense. The court agreed with the state that there could be no prejudice from the discovery violation because the existence of a bullet casing would not affect the viability of the alibi defense. Ivory argues that regardless what defense he offered, he had been denied the right to examine the bullet and make any possible changes to his trial strategy in light of that examination.
 {¶ 21} The state appears to concede that evidence of the bullet casing should have been disclosed in discovery, and we think that concession is appropriate under the circumstances, so we conclude that Ivory has established a violation of Crim.R. 16(B)(1)(c), which requires the state to disclose "tangible objects."
 {¶ 22} When the state violates discovery, Crim.R. 16(E)(3) provides the court with several options, including prohibiting the state from introducing in evidence the material not disclosed. In State v. Wiles (1991), 59 Ohio St.3d 71, 78-79, the supreme court stated that a trial court has discretion under Crim.R. 16(E)(3) to determine the appropriate response for failure of a party to disclose material subject to a valid discovery request. The factors to be applied by the court in determining whether to exclude material that had not been disclosed are (1) whether the state committed a willful violation of Crim.R. 16, (2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense, or (3) whether the accused was prejudiced by admission of the statement. See State v. Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 23} As we understand Ivory's argument, his complaint is not that the court should have barred the state from introducing the bullet casing, but rather that it should have granted a continuance to permit him to examine the casing for evidence that may have exculpated him; for example, he argues that tests might have shown that the bullet came from a gun different from that described by the victim. It bears noting that the state agreed to a continuance, but the court refused that request on grounds that the alibi defense rendered any testing on the casing immaterial so no prejudice existed.
 {¶ 24} We agree with the court that no prejudice from the discovery violation existed. The very nature of the alibi defense offered by Ivory meant that he was not present at the scene of the offense — just what conclusions could be drawn from testing of a casing escapes us. If Ivory was not at the scene, any casing recovered could not have belonged to him, and any scientific conclusions drawn from the casing would not have affected the alibi defense. Ivory argues that testing might have contradicted witness statements that the gun was a nine-millimeter handgun. This argument is highly dubious, as a police detective testified that semiautomatic weapons eject their spent cases. The construction of a revolver is such that spent casings remain in the chambers. Testing for the type of weapon would not have revealed anything new to Ivory.
 {¶ 25} And even if the testing were to yield results, no matter how improbable, that could have gone to credibility, we see little likelihood of prejudice. The police did not find the bullet casing until two days after the shooting and made no attempt to tie that casing to any weapon owned by Ivory. Moreover, there was no testimony that the casing fit the hole left in the van. The state presented the casing simply to suggest that a gun had been fired in the vicinity, hoping to make a connection between the hole in the van and spent casing. It made no scientific claims of that assertion, however, and left it to the jury to make its own conclusions. We see very little, if any, chance of prejudice from the admission of the spent bullet casing.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., and Calabrese, Jr., J., concur.