OPINION
{¶ 1} Defendant-appellant Patricia Harn appeals from her conviction in the Columbiana County Common Pleas Court of felonious assault with a firearm specification, violations of R.C. 2903.11(A)(2) and 2941.145. The issue raised in this appeal is whether the jury's verdict was against the manifest weight of the evidence. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On June 3, 2003, Patty Harn attended her stepson's (Randall Harn) graduation party. (Tr. 60). During and after the party, Patty consumed a large quantity of alcohol. (Tr. 49). One of Patty's friends drove her home. (Tr. 48).
 {¶ 3} Later, that evening Patty's husband, Butch Harn, arrived home from the graduation party. When he arrived home it was raining, and Patty had left all of the car windows down. (Tr. 92). This caused a verbal altercation between the two of them. (Tr. 92).
 {¶ 4} After the verbal altercation, Patty proceeded to go upstairs to their bedroom. She then called her friend, Sally Lewis. Sally testified that Patty was upset. (Tr. 80). While Patty was on the phone with Sally, Butch went upstairs to go to bed. (Tr. 95). As he walked into the bedroom, he saw Patty sitting on the bed, talking on the phone, and holding a 12-gauge shotgun. (Tr. 95, 108).
 {¶ 5} Another verbal altercation occurred between Patty and Butch. She told him to get out of the bedroom and leave her alone or she would shoot him. (Tr. 95). Butch stepped out of the room and then began to re-enter. (Tr. 96). As he did, the shotgun fired. (Tr. 96). The slug passed through the bedroom door just inches from Butch's head. (Tr. 96, 100).
 {¶ 6} Following the shooting, Butch went downstairs to make anyone in the house leave so that they would not be injured. (Tr. 100). The only other person in the house was Butch's son Randall. (Tr. 100). Butch told Randall what happened and said, "The bitch tried to shoot me." (Tr. 65). Shortly thereafter Patty went downstairs and left the house without saying a word. (Tr. 102).
 {¶ 7} Later that evening, Butch called the police to report the incident. (Tr. 103). He also called Sally because he believed that Patty went to her house. His purpose for calling Sally was to make sure that Patty was alright. (Tr. 83). During their conversation, he told Sally, "I think the bitch tried to kill me." (Tr. 83).
 {¶ 8} As a result of the shooting, Patty was arrested and charged with felonious assault with a firearm specification. The case proceeded to trial. The jury found her guilty of felonious assault with a firearm specification. (Tr. 174-175). Patty was sentenced to two years on the felonious assault conviction and three years on the firearm specification. (05/13/05 J.E.). The sentences were ordered to be served consecutively. (05/13/04 J.E.). Patty timely appeals raising one assignment of error.
 ASSIGNMENT OF ERROR {¶ 9} "THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE STATE PRESENTED NO EVIDENCE WHATSOEVER THAT THE DEFENDANT/APPELLANT KNOWINGLY INTENDED TO ASSAULT HER HUSBAND, ROBERT HARN, WITH A GUN."
 {¶ 10} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. Such an undertaking essentially places the Court of Appeals in the position of the thirteenth juror. Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
 {¶ 11} An appellate court will only reverse and remand a conviction as contrary to the manifest weight of the evidence in order to prevent a miscarriage of justice. The authority to do so is reserved for the rare and exceptional case where the evidence weighs heavily against the conviction and convinces us that the jury clearly lost its way. Thompkins, 78 Ohio St.3d at 387. An appellate court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the essential elements of the offense have been proven beyond a reasonable doubt. State v. Baker (1993),92 Ohio App.3d 516, 538.
 {¶ 12} Patty contends that her conviction is against the weight of the evidence because the state did not prove beyond a reasonable doubt that she acted with the requisite intent, "knowingly," for a felonious assault conviction. She bases her contention on her testimony, Butch's testimony, and Sally's testimony. She argues that their collective testimony establishes that she did not intend to shoot Butch. She further contends that the evidence established that Butch was not in fear for his safety, thus, her actions did not constitute "knowingly" as is required by the statute. Lastly, she argues that when considering all the evidence that she is knowledgeable about guns, that she has a better aim than Butch, Butch's statement to the investigator that if she wanted to shoot him she would have shot him, and her action of leaving the house after firing one shot proves she did not intend to harm Butch.
 {¶ 13} Felonious assault under R.C. 2903.11(A)(2) is defined as knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. Thus, the requisite intent required to be proven beyond a reasonable doubt was "knowingly." A person acts "knowingly" when she is aware that her conduct will probably cause a certain result. R.C.2901.22(B).
 {¶ 14} It is common knowledge that a firearm is an inherently dangerous instrumentality, which use of is reasonably likely to produce death. State v. Widner (1982), 69 Ohio St.2d 267, 270. Moreover, courts have consistently held that shooting a gun in a place where there is a risk of injury to one or more persons supports the inference that the offender acted knowingly. Statev. Roberts (Nov. 9, 2001), 1st Dist. No. C-000756, citing Statev. Gregory (1993), 90 Ohio App.3d 124. See, also, State v.Phillips (1991), 75 Ohio App.3d 785, 792 (stating that firing a gun alone is sufficient evidence of intent to cause physical harm); State v. Ivory, 8th Dist. No. 83170, 2004-Ohio-2968
(stating that firing a gun in a person's direction is sufficient evidence of felonious assault); State v. Brooks (1989),44 Ohio St.3d 185, 192 (stating a reasonable jury could convict defendant for felonious assault for pointing a gun and either firing or attempting to fire it at victim).
 {¶ 15} The evidence is undisputed as to the events that occurred that night. Patty was sitting on the bed with the shotgun in her hand when Butch entered the room. Patty told Butch to leave or she would shoot him. Butch retreated from the room for a moment, but then attempted to re-enter. As he was re-entering the room, Patty fired the gun, missing his head by inches.
 {¶ 16} Given the above case law and these facts, it is clear that the jury did not lose its way. Patty's action of threatening to shoot and then shooting in the direction of Butch meets the requirements for acting knowingly.
 {¶ 17} While Patty may argue that the evidence also infers that Butch was not in fear of his life or safety, this argument misses the point of what evidence is relevant to prove felonious assault. The victim's state of mind, although relevant to some offenses, such as aggravated menacing, R.C. 2903.21, is not relevant to felonious assault. State v. Abdoulaye, 2d Dist. No. 20050, 2004-Ohio-5825. Aggravated menacing, as defined, requires the victim to be put in fear. However, felonious assault, as defined, has no such requirement. Id. Therefore, whether Butch was afraid (or not) for his safety is of no consequence. Id. And, as such, this fact does not establish or support the argument that the verdict was against the manifest weight of the evidence.
 {¶ 18} Likewise, Patty's argument that her knowledge about guns, the testimony that establishes that she was a good shot, and her action of leaving the house after firing one shot instead of following him with the gun to shoot at him again, also does not establish that the verdict was against the manifest weight of the evidence. Patty is correct that the uncontroverted evidence establishes that she was a good shot, she was knowledgeable about guns, and Butch did say if she intended to shoot him she would have. Furthermore, the evidence was uncontroverted that after she shot the gun, she left the house and did not pursue Butch to try to shoot him. However, this evidence plays more against her than it does for her.
 {¶ 19} Patty testified that she was knowledgeable about guns; she had grown up around guns. (Tr. 130-131). She knew how to load and fire a gun. (Tr. 130-131). She knew to never point a loaded weapon at someone. (Tr. 131). Thus, it could be concluded that she knew the dangers of firing the gun in the home. She knew that someone could get injured. Furthermore, having knowledge of guns she would know that firing a gun at the doorway where her husband was re-entering the room could cause him harm. She knew that the probable result of firing a shotgun in a person's direction was that the person would be shot and injured. Moreover, the above information, when taken in conjunction with Butch's testimony that when he first entered the bedroom she told him to get out or she would shoot him, indicates that she knew what she was doing. Furthermore, her act of leaving the house after firing the one shot could be viewed as her realization that she just did something very stupid, which could have resulted in injury to Butch. Thus, given this information, the jury easily could have concluded that she acted knowingly.
 {¶ 20} Consequently, when considering all of the above information, the verdict was not against the manifest weight of the evidence. The evidence supports the conclusion that she acted "knowingly." This assignment of error lacks merit.
 {¶ 21} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.