[Cite as *State v. Willis*, 2014-Ohio-114.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99735

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERIAL L. WILLIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564729

**BEFORE:** Boyle, A.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 16, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue, East
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Scott Zarzycki
          Nicole Ellis
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, Terial Willis, appeals his conviction for murder, challenging the sufficiency and weight of the evidence, the trial court's jury instructions, evidentiary rulings, and the competency of his trial counsel. Finding no merit to the appeal, we affirm.

## Procedural History and Facts

{¶2} Following a 911 call and a report of a gunshot fired, Takella Giles ("Takella") was found dead in her apartment with her two-year-old son sleeping in the other room. Willis, the father of the two-year-old boy and Takella's boyfriend, was arrested in connection with Takella's death and indicted on eight counts: two counts of aggravated murder in violation of R.C. 2903.01(A) and (B); burglary in violation of R.C. 2911.12(B); murder in violation of R.C. 2903.02(B); felonious assault in violation of R.C. 2903.11(A)(2); two counts of having weapons while under disability in violation of R.C. 2923.13(A)(1) and (3); and tampering with evidence. Six of the counts carried one- and three-year firearm specifications.

{¶3} After pleading not guilty to the charges, Willis executed a jury waiver with respect to the two having weapons while under disability counts, and the remaining counts were heard by a jury.

{¶4} At trial, the state presented 17 witnesses in support of its case. We focus our discussion on the following facts relevant to this appeal.

{¶5} On June 30, 2012, a male caller contacted 911, requesting assistance for a female shot in her arm. The 911 tape was played for the jury. The caller, later

determined to be Willis, indicated that there was serious bleeding, denied any involvement or knowledge of who shot the victim, and indicated that he was no longer with the victim. Despite the 911 operator's attempts to get the caller to return to the victim, the caller stated "can't go in there; got nothing to do with it."

{¶6} Cleveland Metropolitan Housing Authority ("CMHA") Sergeant Mark Ortiz testified that he and another officer responded to a broadcast of shots fired in one of CMHA's housing units. He arrived first on the scene, discovering Takella "slumped over in the corner" and her son unharmed, sleeping in one of the bedrooms. EMS arrived on the scene, determined that the victim had no vital signs and pronounced Takella dead on the scene.

{¶7} According to the deputy medical examiner who conducted the autopsy, Takella's manner of death was a homicide and the cause of death was a "gunshot wound to the right shoulder with internal injuries to the organs." The deputy medical examiner also identified other recent injuries on Takella, which included an abrasion to the right side of the neck, a laceration to the right back of the head with hemorrhages underlying the laceration, and a bruise under the scalp on the left back of the head.

{¶8} Cleveland police detective James Raynard testified that he photographed the crime scene. In the photographs, Raynard captured the location of the victim's body near the door to the apartment and the suspected blood trail from the victim to a bedroom. The state further offered photographs taken inside the bedroom, which included the mattress with suspected blood, suspected blood at the foot of the bed, and a kitchen knife

at the base of the bed near the closet. The police later located a .40 caliber spent casing in close proximity to the knife. According to the state's trace evidence analyst, no blood was detected on the knife. Swabs taken from the knife handle, however, revealed that Willis and Takella could not be excluded as contributors of the DNA found. They both were excluded as contributors of the DNA found on the knife blade.

{¶9} Cleveland police officer Thomas Armelli testified that he handled the investigation into the homicide of Takella. On the night of the homicide, Officer Armelli interviewed Ray Broom, who directed the police to a dumpster near Division Street. In the dumpster, the police recovered a Save-A-Lot bag, containing a pair of blood-stained, tan cargo shorts. The blood stains contained on the shorts were later determined to match Takella's DNA profile. A cutting from the waistband of the shorts, which was also analyzed for DNA, was determined to contain DNA contributions from both Willis and Takella. Following the discovery of the blood-stained shorts, the police obtained a warrant for Willis's arrest.

{¶10} Twelve days later, United States marshals located Willis in an apartment on Central Avenue, hiding in a closet covered by two dressers. Willis ignored the marshals' request to exit the closet and ultimately had to be "tased" before being removed from the closet.

{¶11} Once in custody, Officer Armelli and his partner interviewed Willis, and a redacted version of the interview was played for the jury. Officer Armelli testified that Willis denied "dozens of times" having any involvement with Takella's death.

According to Armelli, Willis never explained any circumstances of an accident, a fight, or a struggle of any nature. According to Willis's statement, he woke up that day and left the apartment around 10:00 a.m. to do his "usual" and later learned that Takella had been killed. He stated that he did not kill Takella and that he "got nothing to do with it." Willis indicated that he was wearing a black T-shirt and orange shorts but did not know where they were. Willis stated that he wanted to contact the police but that he had "warrants out."

{¶12} The state also offered the testimony of Ray Broom. According to Broom, who identified himself as Willis's best friend, Willis came over to his house on the night of the shooting, wearing a black shirt and beige shorts that had blood on the front of them. Broom testified as to Willis's emotional state, indicating that "he was upset" — crying and shaking. Broom further testified that he "felt sorry" for Willis, prompting him to contact the homicide detectives. Consistent with Officer's Armelli's testimony, Broom testified that he led the police to the dumpster off of Division Street where Willis had previously discarded his clothes contained in the Save-A-Lot bag. After having his memory refreshed by listening to his earlier statement to the police, Broom further testified that he told the police that he saw Willis with a black gun around 7:00 p.m., the night of the shooting.

{¶13} The state also offered the testimony of Takella's sister, Lucketta Giles, and Karen Osborn, one of Takella's friends, who both testified that they heard Takella and Willis arguing earlier in the day about a phone. According to Lucketta, at approximately

10:30 a.m. on June 30th, she was talking to her sister on the phone when she heard Willis in the background, demanding that Takella give him the phone. Lucketta testified that Willis said, "give me the phone. If I come back, something bad is going to happen." Osborn testified that around 8:00 a.m. that day, she was waiting outside her friend's door in the same complex when she heard Willis and Takella arguing about a cell phone. According to Osborn, she heard Willis say "bitch" and then "something about a cell phone." Osborn further testified that Willis said, "Bitch, you going to die today."

{¶14} The jury found Willis not guilty of the two aggravated murder and burglary counts but guilty of murder, felonious assault, and tampering with evidence. The jury further found Willis guilty of the attached firearm specifications. The trial judge found Willis guilty of the two counts of having weapons while under disability.

{¶15} At sentencing, the felonious assault and murder counts merged, with the state electing to proceed on the murder count. The trial court imposed 15 years to life on the murder count and three years for the firearm specification, to run concurrent to having weapons while under disability and tampering with evidence counts, for a total prison term of 18 years to life.

{¶16} Willis appeals, raising seven assignments of error:

I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.

II. Appellant's convictions are against the manifest weight of the evidence.

III. Appellant was denied his right to a fair trial when the trial court allowed the prosecutor to introduce certain evidence even though the discovery rules were not properly complied with.

IV. The trial court erred in denying appellant's motion for a mistrial and appellant was denied a fair trial by the police officer's improper comments while testifying.

V. The trial court erred by giving a jury instruction on flight which denied appellant's right to a fair trial.

VI. The trial court erred by failing to instruct the jury on the lesser included offense of reckless homicide.

VII. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.

## Sufficiency of the Evidence

{¶17} In his first assignment of error, Willis argues that the state failed to present sufficient evidence to support his conviction for murder. We disagree.

{¶18} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶19} Willis was convicted of one count of murder as defined in R.C. 2903.02(B). To survive a Crim.R. 29 motion for acquittal, the state had to present sufficient evidence

on the elements of felony murder, such that the trier of fact could find Willis guilty of the offense beyond a reasonable doubt. The elements are defined as follows: Under R.C. 2903.02(B), felony murder, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree."

{¶20} The underlying felony giving rise to the felony murder was felonious assault against Takella. Thus, to support the count of felony murder, the state had to present sufficient evidence that Willis caused the death of Takella as a proximate result of his felonious assault against her.

{¶21} Under R.C. 2903.11(A)(2), felonious assault, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶22} The gravamen of Willis's argument is that the state failed to prove that he "knowingly" caused Takella's death. Emphasizing the location of Takella's single gunshot wound, he argues that "if one wanted to inflict death, the shot would not have been to the arm" and more shots would have been fired. Willis further relies on the evidence of his severe emotional state following the shooting as evidence that he "did not intend for this to happen." Willis's arguments, however, are misplaced.

{¶23} Under Ohio's felony-murder doctrine, "a defendant may be held criminally liable for the unintended death that results from the commission of a first or second degree felony." *State v. Tuggle*, 6th Dist. Lucas No. L-09-1313, 2010-Ohio-4162, ¶ 101.

The state, therefore, did not have to prove that Willis knowingly intended to cause Takella's death. Rather, the state had to present sufficient evidence that Willis caused Takella's death as a proximate result of his felonious assault against her. Based on the record before us, the state clearly satisfied its burden.

{¶24} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶25} It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. *State v. Widner*, 69 Ohio St.2d 257, 270, 431 N.E.2d 1025 (1982). This court has consistently held that "shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly." *State v. Hunt*, 8th Dist. Cuyahoga No. 93080, 2010-Ohio-1419, ¶ 19, citing *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636 (1989); *see also State v. Ivory*, 8th Dist. Cuyahoga No. 83170, 2004-Ohio-2968, ¶ 6.

{¶26} The state offered overwhelming evidence that Willis fired the single gunshot. Notably, Willis does not even dispute on appeal that he fired the shot. Nor does Willis challenge the undisputed evidence that the single gunshot wound caused Takella's death. And while Willis may not have intended to kill Takella, evidence of his firing a gun at her was sufficient to establish the requisite mens rea for the felonious

assault — the underlying predicate offense of the felony murder count.  *See Widner* at 270.  Accordingly, construing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence that Willis acted "knowingly" when he fired the gun at Takella.

**{¶27}** The first assignment of error is overruled.

<u>Manifest Weight of the Evidence</u>

**{¶28}** In his second assignment of error, Willis argues that his murder conviction is against the manifest weight of the evidence.

**{¶29}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion.  *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12.  When reviewing a claim challenging the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  After reviewing the entire record, the reviewing court must

> weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Id.*

**{¶30}** In support of this argument, Willis merely restates the same argument raised in his sufficiency challenge, namely, that the record lacks "the requisite evidence which

showed that [he] knowingly caused the death of his girlfriend." Having already rejected this argument, we overrule the second assignment of error.

## Discovery Violation

**{¶31}** In his third assignment of error, Willis argues that "his convictions should be reversed" because the prosecutor failed to comply with Crim.R. 16. Specifically, he contends that the prosecutor did not produce "any reports about [him] allegedly fleeing from CMHA police," despite a CMHA officer testifying to this fact. Relying on Crim.R. 16, Willis contends that the state had an affirmative duty to produce this report.

**{¶32}** Upon receipt of a written demand for discovery from a defendant, Crim.R. 16(B) requires that the state disclose documents and other materials

> related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, [that are] within the possession of, or reasonably available to the state.

Relevant to this assignment of error, the rule specifically identifies "[a]ny evidence * * * material to guilt" and "[a]ll reports from peace officers" as documents subject to disclosure. Crim.R. 16(B)(5) and (6).

**{¶33}** The record reveals, however, that there was no police report compiled to turn over to the defense. At trial, Sgt. Ortiz testified that, a week following the homicide, he saw Willis on a bicycle in the area of Division Street and that Willis ultimately fled on foot upon observing him. Sgt. Ortiz, however, never memorialized this fact into any report because he did not apprehend Willis. He further testified that

CMHA's practice is not to generate a report unless an arrest is made. While the lack of a police report may call into question the credibility of this fact, it does not rise to a discovery violation. Crim.R. 16 applies to items obtained by or belonging to the state. *See State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172. Crim.R. 16(B) does not impose a duty upon the state to produce a report that does not exist.

{¶34} Accordingly, we find no discovery violation by the state to warrant any sanction, let alone any basis to conclude that Willis's convictions should be reversed. The third assignment of error is overruled.

<u>Motion for a Mistrial</u>

{¶35} Willis argues in his fourth assignment of error that the trial court erred in denying his motion for a mistrial following CMHA police officer Christina Sanders's testimony indicating that she knew him "[f]rom previous incidents responding to calls." He contends that the state improperly elicited such testimony from Officer Sanders despite the trial court granting his motion in limine to exclude Evid.R. 404(B) evidence. Relying on this single statement, he argues that he was denied a fair trial. We disagree.

{¶36} "A jury is presumed to follow the instructions, including curative instruction, given it by a judge." *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The decision whether to grant or deny a motion for mistrial "lies within the sound discretion of the trial court" and will not be reversed absent a showing of an abuse of discretion. *Id.*

**{¶37}** "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490 (2d Dist.1988). Instead, the granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

**{¶38}** Here, the trial court properly denied Willis's motion for a mistrial. First, we agree with the state that Officer Sanders's statement was rather innocuous. Contrary to Willis's claim, it is not apparent from the comment that Officer Sanders had arrested Willis on previous occasions by stating that she knew him "from previous incidents responding to calls." Secondly, immediately following the statement, the trial court held a sidebar with the attorneys and then provided a curative, instructing the jury to "disregard any comment that Officer Sanders may have said relative to other contacts with Mr. Willis." Thus, even assuming the comment was improper, the trial court immediately followed the statement with a curative instruction as requested by the defense, which the jury is presumed to have followed. We find no basis to conclude that the single comment deprived Willis of a fair trial. *See Garner* at 59.

**{¶39}** The fourth assignment of error is overruled.

Flight Instruction

**{¶40}** In his fifth assignment of error, Willis argues that his "right to a fair trial was denied because the court improperly instructed the jury." According to Willis, the flight instruction was "improper because the state * * * violated the discovery rules when it did not disclose the reports ahead of time relating to appellant allegedly riding away from the CMHA police on a bicycle." Willis further contends that the wording of the instruction itself was improper, compromising his right "to remain silent and not have that silence converted into evidence against him." Willis's arguments, however, have no merit.

**{¶41}** We initially note that Willis never objected to the flight instruction provided at trial; therefore, we review this issue under the plain error standard. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶42}** Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *Barnes* at 27. Courts are to notice plain error under Crim.R. 52(B), "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Citation omitted.) *Id.*

**{¶43}** The trial court provided the following flight instruction to the jury:

> Consciousness of guilty, flight of the defendant. Testimony has been admitted indicating the defendant fled the scene. You are instructed that the fact that the defendant fled the scene does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.

If you find that the facts do not support the defendant fled the scene or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that he defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight if any to give this evidence.

**{¶44}** Flight from justice "means some escape or affirmative attempt to avoid apprehension." *State v. Spraggins*, 8th Dist. Cuyahoga No. 99004, 2013-Ohio-2537, ¶ 24, citing *State v. Benjamin*, 8th Dist. Cuyahoga No. 80654, 2003-Ohio-281. It is not error for a trial court to give a flight instruction when there is such evidence. *Id.*

**{¶45}** Although Willis focuses solely on Sgt. Ortiz's testimony related to Willis's fleeing on the bicycle — evidence that has already been determined not to constitute any discovery violation — the record contains overwhelming other evidence of Willis's flight. The state offered evidence that Willis was the 911 caller that fled the scene, despite the operator instructing him to return to the victim. The state further offered evidence that Willis was hiding in a closet with two dressers in front of it and that he had to be "tased" in order for the marshal to ultimately apprehend him. This evidence, therefore, warranted the flight instruction. Further, contrary to Willis's assertion, the wording of the instruction does not compromise Willis's constitutional right to remain silent. Unlike

the flight instruction at issue in *State v. Fields*, 35 Ohio App.2d 140, 300 N.E.2d 207 (1st Dist.1973), this instruction did not require Willis to "satisfactorily explain" his actions.

{¶46} We find no error, plain or otherwise, in the trial court's flight instruction provided. The fifth assignment of error is overruled.

## Lesser-Included Offense

{¶47} In his sixth assignment of error, Willis argues that the trial court erred in failing to instruct the jury on the lesser-included offense of reckless homicide. Willis never requested this instruction at trial, and thus, we apply a plain error standard of review to this issue as well. *See Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶48} R.C. 2945.74 provides that "[w]hen the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser-included offense."

{¶49} Reckless homicide, as defined in R.C. 2903.041 provides: "[n]o person shall recklessly cause the death of another." Reckless homicide is a lesser-included offense of felony murder. *State v. Colvin*, 9th Dist. Summit No. 26063, 2012-Ohio-4914, ¶ 15.

{¶50} "Even though an offense may be a lesser included offense, a charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.'" *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192 (quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two

of the syllabus).  In deciding whether to instruct the jury on a lesser-included offense, the trial court must view the evidence in a light most favorable to the defendant.  *Id.* "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense."  *Id.*  "Rather, a court must find 'sufficient evidence' to 'allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included (or inferior-degree) offense.'"  *Id.,* quoting *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992).

{¶51} Notably, even when a defendant testifies in support of a claim of recklessness over intentional murder, the court should not instruct on the lesser offense if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense.  *State v. Campbell*, 69 Ohio St.3d 38, 47, 630 N.E.2d 339 (1994) (a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction).  "To require an instruction * * * every time 'some evidence,' however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to given an instruction on a lesser- included (or inferior-degree) offense."  *Shane* at 630.

{¶52} Relying solely on the kitchen knife found in the bedroom that contained DNA contributions from both Willis and Takella on its handle, Willis argues that "one can conclude that the knife was used in the struggle and that is something that the jury should have been permitted to consider so far as a charge of reckless homicide is concerned."  We find that this evidence alone fails to meet the threshold of  "sufficient

evidence" to "allow a jury to reasonably reject the greater offense" of felony murder.

Notably, Willis never even testified in support of a theory of recklessness at trial. And in his statements to the police, he consistently denied any involvement in the shooting. Conversely, the state offered evidence that Willis fled the scene and then discarded the evidence connecting him to the shooting. The state further offered evidence that Willis had threatened Takella earlier in the day. Indeed, the evidence taken as a whole indicates that no jury could reasonably acquit of the felony murder charge in favor of the recklessness charge.

**{¶53}** We find no error, let alone plain error, in the trial court's jury instructions.

**{¶54}** The sixth assignment of error is overruled.

<u>Ineffective Assistance of Counsel</u>

**{¶55}** In his final assignment of error, Willis argues that he was denied the effective assistance of counsel because his trial counsel failed to request an instruction on the lesser-included offense of reckless homicide, a third-degree felony. We disagree.

**{¶56}** To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**{¶57}** "In Ohio, there is a presumption that the failure to request an instruction on a lesser-included offense constitutes a matter of trial strategy and does not by itself establish plain error or the ineffective assistance of counsel." *State v. Riley*, 10th Dist. Franklin No. 06AP-P1091, 2007-Ohio-4409, ¶ 5, citing *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996). The defense in this case requested an instruction on the lesser-included offense of involuntary manslaughter, which is also a third-degree felony like reckless homicide. The decision to request an instruction on this offense as opposed to reckless homicide appears to have been a tactical one, thereby negating any ineffective assistance of counsel claim. Further, as discussed above, we find insufficient evidence in the record to support an instruction on reckless homicide and, therefore, no grounds for the trial court to have granted such a request.

**{¶58}** Moreover, even if we assumed that the failure to request an instruction on reckless homicide was deficient, Willis fails to satisfy the second prong of the *Strickland* analysis. There is no evidence to support any claim of a reasonable probability that had the instruction been given, the outcome of the trial would have been different.

**{¶59}** The final assignment of error is overruled.

**{¶60}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE   JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR