**[Cite as *State v. Hayes*, 2024-Ohio-6046.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29987 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01473 |
| | : | |
| JAMAR HAYES | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 27, 2024

. . . . . . . . . . .

CHIMA R. EKEH, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Jamar Hayes appeals from his convictions following a bench trial on one

count of murder, two counts of felonious assault, one count of discharging a firearm on or near a prohibited premises, one count of menacing by stalking, seven counts of intimidation of a crime witness, and multiple firearm specifications.[1]

{¶ 2} Hayes contends the State failed to disprove self-defense beyond a reasonable doubt. He challenges the imposition of what the trial court characterized as a mandatory consecutive prison term on a firearm specification. He also disputes the sufficiency of the evidence to sustain his menacing-by-stalking conviction, and he alleges ineffective assistance of counsel for not seeking to have the charge tried separately.

{¶ 3} For the reasons set forth below, we conclude that the State disproved self-defense. We are persuaded, however, that the trial court erroneously imposed a consecutive sentence on the firearm specification. We also conclude that the State presented legally insufficient evidence to sustain Hayes's conviction for menacing by stalking. Finally, defense counsel's failure to seek to have the menacing-by-stalking charge tried separately did not constitute ineffective assistance.

{¶ 4} The trial court's judgment will be affirmed in part, reversed in part, and vacated in part. The menacing-by-stalking conviction will be vacated, and the case will be reversed and remanded for the trial court to impose a concurrent sentence on the challenged firearm specification. In all other respects, the judgment will be affirmed.

## I. Background

{¶ 5} On May 8, 2022, Hayes fired multiple shots from his car into a car being driven by Christian Smith and occupied by passengers Shauna Cameron and Emma

---

[1] The trial court found Hayes guilty of several other offenses that merged into those set forth above as allied offenses of similar import.

Chafins. The incident occurred on Route 35 near Dayton. One of Hayes's shots struck and killed Cameron. Hayes admitted firing the shot that killed Cameron. The primary issue at trial was whether he acted in self-defense.

{¶ 6} Smith and Chafins testified that they were traveling east on Route 35 headed to a birthday party in Riverside. As they exited onto Woodman Drive, they heard several gunshots and saw a black car with a broken taillight speed past them on eastbound Route 35. Upon realizing that Cameron had been shot, Smith drove to Miami Valley Hospital, where Cameron. later died. Chafins spoke to police the day after the shooting and identified Hayes, her former boyfriend, as a suspect. Chafins knew that Hayes drove a black Chrysler 300 with a broken taillight. Investigators discovered that Hayes's current girlfriend, K.A., was the registered owner of a black Chrysler 300. Surveillance-camera footage also depicted a black Chrysler 300 exiting eastbound Route 35 one exit past Woodman Drive around the time of the shooting.

{¶ 7} Although Smith never had met Hayes, he testified that they had exchanged "antagonizing" text messages or phone calls regarding Chafins and her relationships with both men. Chafins confirmed that the two men did not like each other. She testified about her prior relationship with Hayes and his threats and various acts of violence against her. She previously had seen a gun in his car, and he had sent her a text message in which he admitted shooting up the house in which she resided with Smith.

{¶ 8} After Hayes shot Cameron, police inspected Smith's vehicle and found no firearm, shell casings, or any other evidence suggesting that anyone in Smith's vehicle had fired a weapon. Within days of the shooting, Hayes changed his appearance by

cutting off his dreadlocks. He sold the Chrysler 300 two days after the shooting. With the help of U.S. Marshalls, police found Hayes and arrested him five months later.

{¶ 9} Following his arrest, Hayes repeatedly called his girlfriend, K.A., and threatened to harm her if she cooperated with police. He asked her to ignore a trial subpoena, leave town, or testify that she had been in the car with him and that Smith had fired first. K.A. instead testified at trial that Hayes regularly drove the Chrysler 300 and that she had not been in the car with him when he shot Cameron.

{¶ 10} Hayes testified on his own behalf and asserted self-defense. He claimed to have been driving the Chrysler 300 on Route 35 east to a liquor store on Smithville Road. While doing so, he saw a hand and hair coming out of the driver's-side window of Smith's car. He then saw a female turn around in the back seat. When she did so, he realized that it was his ex-girlfriend Chafins. A hand holding a gun then reappeared out of the driver's-side window. According to Hayes, the hand seemed to be motioning for him to come closer. Hayes attempted to pass Smith's car and get away. As he did so, three shots were fired from Smith's car. The shots all hit Hayes's vehicle, and he swerved back behind Smith's car.

{¶ 11} Hayes testified that he then retrieved a gun from inside his own car, and a "cat and mouse game" ensued. Both cars changed speed and position trying to outmaneuver each other. Hayes again attempted to pass Smith's vehicle, but he slowed down when a hand holding a gun reappeared. Hayes testified that he briefly exited Route 35 at the Woodman Drive exit. He heard two more gunshots before ducking and firing twice in return. Hayes's gun jammed, and he heard four more shots hit his car. At that

point, he returned to the highway and sped away on eastbound Route 35 before taking an exit near Smithville Road and Linden Avenue. He proceeded to the liquor store where he stopped and observed a number of bullet holes in his car. Hayes testified that he returned to his sister's house, where he ate and drank before leaving to play volleyball. He explained that he did not notify police because he was on parole and was not allowed to possess a firearm.

{¶ 12} Hayes testified that he took his car to a private mechanic the day after the shooting. He claimed that the mechanic repaired five bullet holes and returned the car to him the same day. Hayes did not get a receipt. He claimed to have sold the Chrysler 300 one day after having the bullet holes repaired. He acknowledged cutting off his dreadlocks and calling K.A. after his arrest to threaten her and ask her to lie for him.

{¶ 13} Based on the evidence presented, the trial court found Hayes guilty on all counts and specifications in the "A" and "B" indictments. After merging allied offenses of similar import, the trial court imposed an aggregate sentence of 48 to 53.5 years to life in prison. Hayes appeals, advancing four assignments of error.

## II. Analysis

{¶ 14} Hayes's first assignment of error states:

**THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT HAYES' USE OF DEADLY FORCE WAS NOT IN SELF-DEFENSE.**

{¶ 15} Hayes contends the State failed to disprove any element of his self-defense claim beyond a reasonable doubt. Therefore, he asserts that his convictions for murder, felonious assault, and discharging a firearm on or near prohibited premises were against

the weight of the evidence.

{¶ 16} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 17} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.).

{¶ 18} With the foregoing standards in mind, we reject Hayes's manifest-weight challenge predicated on self-defense. In order to defeat his self-defense claim, the State needed to disprove at least one element of self-defense beyond a reasonable doubt.

*State v. Bowen*, 2024-Ohio-1079, ¶ 12 (2d Dist.). One element of self-defense is that the defendant was not at fault in creating the situation giving rise to the affray. *State v. Tunstall*, 2024-Ohio-2376, ¶ 16 (2d Dist.). This requirement prevents a defendant from voluntarily entering into a deadly encounter and then claiming self-defense. *Id.* at ¶ 17.

{¶ 19} Whether Hayes was at fault in creating the situation that led to Cameron's death turned on witness credibility and whose version of events the trial court believed. According to the State's witnesses, Hayes ambushed Smith's car on Route 35 and fired several shots, one of which struck and killed Cameron. Conversely, Hayes testified that Smith fired first and that he returned fire only after attempting to evade Smith's car. Although Hayes contends the State's witnesses were not credible for various reasons, the trial court had discretion to believe them.

{¶ 20} Hayes's own actions also reasonably could have caused the trial court to disbelieve his self-defense claim. Within two days of the shooting, he changed his appearance and sold the Chrysler 300 that allegedly had been riddled with bullets and repaired in one day. After police arrested him months later, he repeatedly threatened to harm K.A. if she cooperated with the prosecution and refused to lie for him. Based on the evidence presented, the trial court did not lose its way and create a miscarriage of justice by choosing to believe the State's witnesses and to disbelieve Hayes. *State v. White*, 2005-Ohio-212, ¶ 69 (2d Dist.). The first assignment of error is overruled.

{¶ 21} Hayes's second assignment of error states:

**THE TRIAL COURT ERRED IN IMPOSING A MANDATORY CONSECUTIVE SENTENCE ON THE DISCRETIONARY THIRD**

**FIREARM PRISON TERM.**

{¶ 22} Hayes challenges the trial court's imposition of a "mandatory consecutive" prison term on a firearm specification accompanying count six (felonious assault) of the "A" indictment. He acknowledges that the Revised Code authorized the trial court to impose mandatory consecutive prison terms on firearm specifications accompanying count one (murder) and count five (felonious assault). With regard to count six, however, he contends the trial court's firearm-specification sentence was contrary to law. He maintains that a prison term for count six's firearm specification was discretionary and that it was required to be served concurrently.

{¶ 23} In response, the State agrees that the trial court had discretion to impose a prison term for the firearm specification accompanying count six. Once the trial court elected to do so, however, the State reasons that the sentence for that specification statutorily became "a mandatory term of incarceration [that] must be served prior to and consecutive to the sentence imposed for the underlying felonious assault, and consecutively to the other firearm specifications." Therefore, the State insists the trial court did not err in imposing a "mandatory consecutive" prison term on the challenged firearm specification.

{¶ 24} The record reflects that the murder charge in count one contained two different firearm specifications. The trial court imposed mandatory five-year and three-year prison terms on them. The felonious-assault charge in count five also contained a firearm specification. The trial court imposed a mandatory three-year prison term on it. The trial court ordered the sentences for these specifications to be served consecutively

to each other and to the sentences imposed on the substantive offenses.

{¶ 25} The felonious-assault charge in count six contained another firearm specification. With regard to this specification, the trial court's judgment entry stated:

> **FIREARM SPECIFICATION**, R.C. 2929.14/2941.145 Discretionary **3-YEAR** prison term which is **mandatory** time and must be served consecutively and prior to the underlying prison sentence and consecutively to all other firearm specifications except the firearm specification attached to Count 7.

November 30, 2023 Judgment Entry at p. 1.

{¶ 26} Finally, with regard to a firearm specification accompanying count seven, which charged Hayes with discharging a firearm on or near prohibited premises, the trial court's judgment entry stated:

> **FIREARM SPECIFICATION**, R.C. 2929.14/2941.145 Discretionary **3-YEAR** prison term to be served concurrently with the underlying prison term and with all other firearm specifications herein.

*Id.* at pg. 2.

{¶ 27} During Hayes's sentencing hearing, the trial court also characterized its sentence on the firearm specification accompanying count six as a "mandatory 3-year prison term." Trial Transcript Vol. V at 642. The trial court later "reiterate[d] . . . that the firearm specification that I've announced on each of the offenses is mandatory time, has to be served consecutively to and prior to any sentence . . . on the underlying offenses." *Id.* at 649.

**{¶ 28}** Reading the trial court's judgment entry in conjunction with its remarks at sentencing, it appears to have found that it had discretion to impose a prison sentence on the firearm specification accompanying count six. Having elected to do so, it characterized its three-year sentence as "mandatory time" that was required to be served consecutively. As noted above, Hayes contends the firearm-specification sentence on count six was discretionary and that it was required to be served concurrently.

**{¶ 29}** Upon review, we agree with Hayes that the trial court erred in ordering the firearm-specification sentence on count six to be served consecutively. Generally, a trial court may impose only one prison term on firearm specifications of the type at issue here for felonies committed as part of the same act or transaction. *State v. Beatty*, 2024-Ohio-5684, ¶ 10, citing R.C. 2929.14(B)(1)(b). An exception is found in R.C. 2929.14(B)(1)(g), which provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under

that division for any or all of the remaining specifications.

{¶ 30} The foregoing exception applied in Hayes's case. One of his multiple felony convictions was for murder, and he was convicted of four firearm specifications of the type described under R.C. 2929.14(B)(1)(a) in connection with counts one, five, six, and seven.[2] Under R.C. 2929.14(B)(1)(g), the trial court was required to impose prison terms for two of those four specifications. The trial court did so on the specifications accompanying counts one and five. Therefore, those three-year sentences were "mandatory prison terms" that required consecutive service. *Beatty* at ¶ 10, 14. The trial court then had discretion to impose prison terms for the remaining two specifications accompanying counts six and seven. This means any prison sentence imposed on those counts was not a "mandatory prison term." *Id.* Rather, any prison sentence imposed on the firearm specifications accompanying counts six and seven was a discretionary prison term.

{¶ 31} The issue on appeal is whether the prison sentence the trial court elected to impose on count six's firearm specification was "mandatory time" that required consecutive service. The Ohio Supreme Court resolved that issue in *Beatty*, which was

---

[2] Parenthetically, we note that the mandatory five-year firearm specification accompanying count one was not of the type described under R.C. 2929.14(B)(1)(a). The five-year specification was of the type described under R.C. 2929.14(B)(1)(c)(i) as it involved causing death by discharging a firearm from a motor vehicle. Therefore, it was subject to different statutory provisions, including R.C. 2929.14(B)(1)(c)(iii), which authorized the trial court to impose both a three-year and a five-year firearm-specification sentence in connection with the murder charge in count one. For purposes of the present appeal, the only relevant firearm-specification sentences are the three-year sentences accompanying counts one, five, six, and seven. As noted above, Hayes's assignment of error specifically challenges only the trial court's imposition of a "mandatory consecutive" three-year sentence on the specification accompanying count six.

decided after briefing on Hayes's appeal. As in the present case, *Beatty* involved four firearm specifications that were governed by R.C. 2929.14(B)(1)(g). In reviewing the situation, the Ohio Supreme Court observed:

> There is no dispute that the trial court was required to impose prison terms for two of the four firearm specifications attached to Beatty's felonious-assault offenses under R.C. 2929.14(B)(1)(g) and that the trial court was required to run those two prison terms consecutively under R.C. 2929.14(C)(1). There is also no dispute that the trial court had the discretion to impose prison terms for the remaining two firearm specifications under R.C. 2929.14(B)(1)(g). The sole dispute is whether the two additional prison terms can or must run consecutively.

*Id.* at ¶ 14.

{¶ 32} After analyzing Ohio sentencing law, the *Beatty* court noted that "the plain language of R.C. 2929.41(A) evidences the General Assembly's intent that all prison terms—including those for firearm specifications—run concurrently unless a specific exception applies within the statutory provisions enumerated in R.C. 2929.41(A)." *Id.* at ¶ 17. The Ohio Supreme Court found that "[t]he only statutory provision allowing for consecutive prison terms for firearm specifications—R.C. 2929.14(C)(1)(a)—applies to 'mandatory prison term[s]' only, and therefore does not apply to prison terms imposed at the trial court's discretion under R.C. 2929.14(B)(1)(g)." *Id.* at ¶ 26. As a result, the *Beatty* court concluded that "[t]he General Assembly has not given trial courts the power to require that discretionary prison terms for firearm specifications be served consecutively, and therefore, under R.C. 2929.41(A), such prison terms 'shall be served concurrently'

with other prison terms." *Id.* at ¶ 27.

{¶ 33} Based on *Beatty*, the trial court erred in imposing a consecutive sentence for the firearm specification accompanying count six. The trial court's judgment will be reversed with respect to that sentence, and the case will be remanded for the trial court to run that three-year sentence concurrently with all other prison terms. The second assignment of error is sustained.

{¶ 34} Hayes's third assignment of error states:

**APPELLANT'S CONVICTION FOR MENACING BY STALKING WAS BASED ON INSUFFICIENT EVIDENCE.**

{¶ 35} Hayes contends the State presented legally insufficient evidence to sustain his conviction for menacing by stalking. He argues that he did not cause the victim of that offense, K.A., to fear physical harm or cause mental distress. Although he threatened her over the telephone while in jail, he claims her behavior and responses showed that she did not take his threats seriously and was neither frightened nor distressed.

{¶ 36} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 37} Hayes was found guilty of violating R.C. 2903.211(A)(1), which provides:

"No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person[.]" A "pattern of conduct" means two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). " 'Mental distress' means any of the following: (a) Any mental illness or condition that involves some temporary substantial incapacity; (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b).

{¶ 38} Hayes challenges his conviction on count one of the "B" indictment, which alleged that he engaged in menacing by stalking against K.A. between October 13, 2022 and March 28, 2023 while in jail awaiting trial. The State's evidence consisted of recorded jailhouse phone conversations between K.A. and Hayes and K.A.'s testimony about those conversations. During the calls, Hayes threatened to have K.A. physically injured or killed if she cooperated with police. He used profanities when referring to her and threatened to have her "whacked." K.A. also testified about a prior occasion when Hayes had caused bruising to her body during a fight that resulted in her calling the police.

{¶ 39} Hayes plainly threatened violence against K.A. while in jail, and her testimony about him previously injuring her during a fight reasonably could have caused her to believe he would inflict physical harm or cause mental distress. Based on her testimony, however, Hayes in fact did neither. Indeed, K.A.'s testimony reflects that there was no real fear or distress on her part.

{¶ 40} With regard to the prior bruising incident, K.A. admitted that the bruises may have resulted from her attacking Hayes and his trying to stop her. She also acknowledged once "ripping out" his dreadlocks during a fight. When asked on direct examination whether Hayes's jailhouse phone calls had upset her, K.A. responded that his words were "nothing new." She agreed that rehearing the conversations at trial was "upsetting" but only because the nature of their relationship was being revealed "in public where everybody else can hear it." On cross-examination, K.A. agreed that she recognized the phone number whenever Hayes called her from jail. She once blocked the number before later unblocking it. K.A. also admitted making her own violent threats to Hayes during the recorded conversations. They included threats to "stab him" and "cut off his penis." K.A. stated that she had no real intention to do either. K.A. agreed that she and Hayes "regularly" talked to each other that way and that the jailhouse conversations were consistent with their verbal exchanges before his incarceration. Notably, K.A. agreed that she was not crying or even "upset" about the jailhouse calls when they occurred. She made clear that she was only upset about the fact that her personal relationship was being made public at trial.

{¶ 41} Having carefully examined K.A.'s testimony and the recorded conversations, we conclude that the State presented legally insufficient evidence to sustain Hayes's menacing-by-stalking conviction. We see no evidence that he caused K.A. to believe he would cause physical harm or that he caused her mental distress. The State elicited no such testimony on direct examination. It played the recorded conversations in court, and K.A. acknowledged that they contained threats by Hayes. She

also acknowledged being upset about the calls "right now" while hearing them in court. She characterized the threats as nothing new, however, and simply disliked them being heard by everyone in open court.

{¶ 42} K.A.'s cross-examination established that the threats went both ways and were a normal part of their relationship. K.A.'s comments and her tone during the conversations showed that she did not take Hayes or his threats seriously. As noted above, she also testified that she was not "upset" about his calls, which she could have blocked, when they occurred. Moreover, our own review of the recorded conversations confirms that K.A. did not appear to be in fear or distressed by his threats. During the phone calls, which were laden with profanity, insults, and threats, K.A. remained defiant and dismissive of virtually everything Hayes said. The actual recordings upon which the State relied provided no evidentiary support for a menacing-by-stalking conviction. For the foregoing reasons, the third assignment of error is sustained.

{¶ 43} Hayes's fourth assignment of error states:

**APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

{¶ 44} Hayes alleges ineffective assistance of counsel based on his attorney's failure to seek severance of the menacing-by-stalking charge involving K.A. He argues that counsel's inaction enabled the State to introduce evidence of his history of violence against K.A. and others.

{¶ 45} As set forth above, the menacing-by-stalking charge involved Hayes's threats against K.A. while he was in jail. At trial, however, the State was permitted to introduce evidence of Hayes's earlier acts of violence against K.A. and two other women.

This evidence was used to elevate menacing by stalking from a misdemeanor to a fourth-degree felony. *See* R.C. 2903.211(B)(2)(e) (elevating the offense to a felony if the offender has a history of violence against the victim or any other person). Hayes argues that the evidence of his violent history was unrelated to the charges stemming from the shooting and that the State's introduction of that evidence prejudiced his defense against the shooting-related charges. Therefore, he argues that defense counsel provided ineffective assistance by failing to seek severance of the menacing-by-stalking charge.

**{¶ 46}** We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.

**{¶ 47}** To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2005-Ohio-6143, ¶ 29 (2d Dist.). To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland*

at 687-688 and *Bradley* at paragraph two of the syllabus.

**{¶ 48}** Upon review, we find no ineffective assistance of counsel based on Hayes's attorney's failure to seek severance of the menacing-by-stalking charge. A defendant is not prejudiced by joinder of offenses for trial where the evidence of each crime is simple and direct. *State v. Turner*, 2024-Ohio-684, ¶ 35 (2d Dist.). "Evidence is simple and direct if the jury can readily separate the proof required for each offense, the evidence is straightforward and unlikely to confuse jurors, and if there is little danger that the jury would improperly consider testimony on one offense as corroborative of the other." *Id.* at ¶ 36.

**{¶ 49}** Here the evidence underlying the menacing-by-stalking charge and the other charges related to the shooting was simple and direct. With regard to the menacing-by-stalking charge, the State relied exclusively on Hayes's jailhouse threats to K.A. It used evidence of prior acts of violence by Hayes to elevate the charge to a felony. Conversely, the shooting-related charges focused primarily on events that occurred on May 8, 2022 when Hayes shot and killed Cameron and post-shooting actions he took. Although the shooting-related charges did not involve Hayes's prior acts of violence, the trial court was capable of separating the proof required for each offense and was unlikely to have been confused. A judge in a bench trial is particularly capable of applying the evidence correctly and is presumed to have done so. *State v. Faulkner*, 2023-Ohio-2505, ¶ 27 (2d Dist.). Therefore, Hayes has not established prejudice resulting from defense counsel's failure to seek severance. The fourth assignment of error is overruled.

### III. Conclusion

{¶ 50} The judgment of the Montgomery County Common Pleas Court is affirmed in part, vacated in part, and reversed in part. The trial court's imposition of a consecutive sentence on the firearm specification accompanying count six of Hayes's "A" indictment is reversed, and the matter is remanded for the trial court to impose a concurrent sentence on that firearm specification. Hayes's menacing-by-stalking conviction on count one of the "B" indictment is vacated. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.