[Cite as *State v. Bryant*, 2026-Ohio-1674.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :    C.A. No. 2025-CA-45 |
|     Appellee | : |
| | :    Trial Court Case No. 2024 CR 0079 |
| v. | : |
| | :    (Criminal Appeal from Common Pleas |
| BREYON X. BRYANT | :    Court) |
| | : |
|     Appellant | :    **FINAL JUDGMENT ENTRY &** |
| | :    **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 8, 2026, the judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for the sole purpose of resentencing appellant on the firearm specifications attached to his offenses.

Costs to be paid as follows: 50% by appellee and 50% by appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

DAVID R. MILES, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

HANSEMAN, J.

**{¶ 1}** Appellant Breyon X. Bryant appeals from his convictions in the Greene County Common Pleas Court after a jury found him guilty of three counts of felonious assault with a deadly weapon and three attendant firearm specifications. In support of his appeal, Bryant claims that his felonious assault convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Bryant also claims that the trial court erred by imposing consecutive prison terms for each of his firearm specifications and for each of his felonious assault counts. Bryant further claims that the trial court's imposition of maximum, consecutive prison terms was vindictive and unlawfully aimed at punishing him for exercising his right to a jury trial. For the reasons outlined below, the judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for the sole purpose of resentencing Bryant on the firearm specifications.

**Facts and Course of Proceedings**

**{¶ 2}** On February 2, 2024, a Greene County grand jury returned an indictment charging Bryant with three second-degree felony counts of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2). Each of the three counts included a three-year firearm specification under R.C. 2941.145(A). The charges and specifications stemmed from allegations that Bryant fired two gunshots at an unmarked minivan that was in the parking lot of his apartment building and was occupied by three undercover detectives.

{¶ 3} On February 13, 2024, Bryant pleaded not guilty to the indicted charges and specifications. Bryant filed two motions to suppress, and following a suppression hearing, the trial court overruled Bryant's suppression motions in their entirety. Bryant's case proceeded to a three-day jury trial beginning on April 28, 2025. The following information was elicited during Bryant's trial.

{¶ 4} On January 24, 2024, the Columbus Police Department notified the detective section of the Fairborn Police Department that it was seeking assistance with executing an arrest warrant for Bryant. Because Bryant's Fairborn residence was located in a multiunit apartment building, and because Bryant's arrest warrant was considered high-risk in nature, several officers from the Fairborn Police Department set up a perimeter around the apartment building to safely apprehend Bryant.

{¶ 5} In addition to setting up a perimeter, Detective Sergeant John McGuire and Detectives Connor Mulcahy and Patrick Taubert conducted surveillance in a parking lot approximately 150 feet away from Bryant's apartment. All three detectives were in an unmarked, silver Chrysler Pacifica minivan that displayed a standard Ohio license plate. The side windows and front and rear windshields of the minivan were tinted so that a person could not see inside the vehicle without standing beside it. The detectives used the unmarked minivan to blend in with the other vehicles in the parking lot.

{¶ 6} While positioned in the parking lot, the detectives observed Bryant exit his apartment and stand on his front doorstep for approximately 30 seconds before reentering the apartment. A few minutes later, the detectives once again observed Bryant exit his apartment. After exiting his apartment for the second time, Bryant stood on his doorstep and locked his front door. Bryant then walked toward his vehicle, which was parked in the parking lot across from his apartment.

{¶ 7} When Bryant was halfway across the parking lot, Mulcahy, who was in the driver's seat of the minivan, began driving toward Bryant. Mulcahy drove the minivan at a typical speed, which was no more than 10 to 15 miles per hour. As the minivan approached the front of Bryant's vehicle, Mulcahy cut the minivan's tires to a 45-degree angle to restrict Bryant's ability to leave. During that time, Bryant was standing by the open driver's-side door of his vehicle. Before the minivan came to a complete stop, Bryant raised a handgun and pointed it at the minivan. Bryant fired the handgun twice at the minivan and backed away. Both of Bryant's shots struck the minivan. One shot struck the left, front fender near the wheel well, and the second shot struck behind the left, passenger-side door, which was also near the wheel well. One of the projectiles (it could not be determined which) deflated the left, back tire of the minivan.

{¶ 8} After firing at the minivan, Bryant fled. McGuire, Mulcahy, and Taubert exited the minivan and chased Bryant. Bryant did not fire his handgun after the detectives exited the minivan. However, as the detectives were running, Bryant pointed his handgun in the direction of McGuire. Having already been fired upon, McGuire responded by discharging his police-issued firearm toward Bryant. Bryant then took cover behind a nearby vehicle and thereafter surrendered to the officers.

{¶ 9} Bryant testified in his defense and claimed that before the incident in question, two Columbus police officers had visited his apartment and presented him with a warrant to collect his DNA. Bryant complied with the DNA request and heard nothing more about the matter. After his DNA was collected, Bryant claimed that he had received credible death threats from a known source. Bryant never identified the source of the death threats, but he claimed that during the time leading up to the shooting incident, he had been living in fear

4

because of them. Bryant testified that he carried a firearm for his protection. He indicated that he was a self-trained firearm user who had practiced shooting at a gun range.

{¶ 10} Bryant explained that on the day of the incident, he exited his apartment to go to the Spectrum store to exchange his internet equipment. He was carrying his firearm at the time, which he claimed he had legally purchased in 2022. He kept the firearm in a holster located on his right hip.

{¶ 11} When Bryant initially left his apartment, he realized that he had forgotten to grab his router to take to Spectrum, so he went back inside his apartment to get the router. Bryant then exited his apartment again, locked his apartment door, and walked to his vehicle. He claimed that after he had entered his vehicle and begun to put his car key in the ignition, he looked up and saw a silver minivan blocking his path. Bryant testified:

> I seen the silver mini-van that was in front of me. The first thing I noticed, it was parked in front of me. The second thing that I noticed was that the windows were tinted out. The front windshield was tinted, the driver's side window was tinted, the sliding door passenger on the driver's side window was tinted. The rear panel of the van –- of the driver's side and the far back was tinted, as well.
>
> So I did not see anyone inside the vehicle. And then, like I said, I noticed that the sliding passenger door on the driver's side was popped open, and I seen the weather strip.
>
> . . .
>
> So at that point, I got out of my vehicle, and I ran towards the back end of my vehicle. But I never took cover behind the vehicle, I just run towards the back or towards the rear of the vehicle.

And then I drew my firearm, and I turned around and I fired one shot towards the front tire, and I fired a second shot towards the rear tire, and then I ran –- I continued to run northbound to gain distance and to get to safety.

. . .

I perceived the death threats I was getting, that's what the situation was. That's what I perceived it to be.

So I just run northbound . . . away from the van, and thought -- I shot once towards the tire –- the front tire, and I shot the second time towards the rear tire. So that way, the van could not chase me.

Trial Tr. 319-321.

{¶ 12} Bryant later clarified that he fired his weapon based on his fear of the death threats that he had been receiving. He also explained that "the occupants of the vehicle were never the target. The van itself was the target." Trial Tr. 325.

{¶ 13} On cross-examination, Bryant agreed that minivans are primarily used for transporting families and that he had seen minivans parked at his apartment complex before. In addition, Bryant confirmed that he did not know who was in the minivan. Bryant claimed that due to the window tint, the angle of the vehicle, and the popped-open position of the sliding passenger door, his first instinct was to get out of his vehicle, draw his handgun, and shoot two rounds at the minivan. Bryant admitted that he had intended to pull the trigger of his handgun when he fired at the minivan and that it was not the result of a finger slip.

{¶ 14} Although Bryant testified that he had aimed at the tires of the minivan, he acknowledged that he had initially stated otherwise when he was interviewed by an investigating officer after the incident. Specifically, Bryant told the officer, "[W]hen I fired the shots, I didn't—I didn't aim." Trial Tr. 334. Despite that earlier statement, Bryant maintained

6

at trial that he had aimed his weapon at the minivan's tires. Bryant claimed that his earlier statement was the product of stress.

{¶ 15} At the close of trial, the jury deliberated and returned guilty verdicts on all of the felonious assault counts and firearm specifications that were charged in the indictment. On September 2, 2025, the trial court sentenced Bryant to an indefinite term of 8 to 12 years in prison for the first felonious assault count and a definite term of 8 years in prison for each of the two remaining felonious assault counts. The trial court ordered all three prison terms to be served consecutively to one another for a total term of 24 to 28 years in prison. The trial court further ordered the three-year firearm specifications attached to each of the felonious assault counts to be served consecutively to one another and consecutively to the felonious assault prison terms. Accordingly, Bryant received a total, aggregate term of 33 to 37 years in prison.

{¶ 16} Bryant now appeals from his convictions and raises five assignments of error for review.

**First and Second Assignments of Error**

{¶ 17} Under his first and second assignments of error, Bryant claims that his felonious assault convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

*Standards of Review*

{¶ 18} "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the

7

evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 273.

{¶ 19} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagle*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*Felonious Assault*

{¶ 20} Bryant challenges his convictions for three counts of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2). The statute provides that "[n]o person

8

shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

{¶ 21} Here, Bryant does not dispute that he fired a deadly weapon at the minivan occupied by McGuire, Mulcahy, and Taubert. Bryant, however, claims that there was insufficient evidence establishing that he knowingly attempted to cause physical harm to the occupants of the minivan. Bryant contends that the evidence established that he did not intend to injure anyone but that he instead reacted out of fear when he fired his handgun at the vehicle. Bryant claims that the two shots he fired toward the tires of the vehicle demonstrated his lack of intent to injure the occupants of the minivan. Bryant adds that when he learned that the minivan occupants were law enforcement officers, he dropped his handgun and cooperated, further showing his lack of intent to injure anyone.

{¶ 22} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22. Therefore, "[a] defendant is responsible for the natural and probable consequences of his acts, and one is presumed to intend the necessary and natural consequences of those acts." *State v. Phillips*, 75 Ohio App.3d 785, 790 (2d Dist. 1991).

{¶ 23} We have recognized that multiple appellate courts of this state "have held that the firing of a weapon into an area without knowledge of its occupants is sufficient to establish a knowing attempt to cause physical harm for the purpose of a felonious assault conviction." *State v. Moore*, 2023-Ohio-4445, ¶ 48 (2d Dist.), citing *State v. Hill*, 2020-Ohio-1237, ¶ 19-20 (6th Dist.) (holding that the knowingly element of felonious assault was sufficiently established where "appellant indiscriminately fired a gun into an area without

9

knowledge of how many individuals he might endanger" because "the firing of a weapon into an area without knowledge of its occupants . . . is sufficient to establish a knowing attempt to cause physical harm"); *State v. Elko*, 2004-Ohio-5209, ¶ 54 (8th Dist.) ("[f]iring a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm"), *overruled in part on other grounds, State v. Ford*, 2011-Ohio-765; *State v. Ivory*, 2004-Ohio-2968, ¶ 6 (8th Dist.) ("firing a weapon randomly at victims arguably within range of the shooter is sufficient to demonstrate actual intent to cause physical harm").

{¶ 24} "In a drive-by shooting case involving five victims, this court similarly noted that 'intent to cause physical harm to the five individuals could be inferred from [the defendant's] having shot a gun randomly in the direction of each individual.'" (Bracketed text in original.) *Moore* at ¶ 48, quoting *Phillips* at 792. Therefore, "'[t]he shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that appellant acted knowingly.'" *State v. Leigh*, 2023-Ohio-91, ¶ 24 (2d Dist.), quoting *State v. Gregory*, 90 Ohio App.3d 124, 131 (12th Dist.1993).

{¶ 25} During his testimony, Bryant attempted to convince the jury that he aimed his handgun at the tires of the minivan to establish his lack of intent to injure the occupants of the vehicle. However, Bryant admitted to telling an investigating detective that he did not aim his weapon at all but randomly fired toward the minivan. Trial Tr. 333-335. The jury could have concluded that while awaiting trial, Bryant fabricated the story that he had aimed at the tires in order to place himself in a better light. The jury was free to believe Bryant's initial statement that he had fired at the minivan without aiming.

{¶ 26} In any event, Bryant's claim that he did not specifically intend to injure the occupants of the minivan is irrelevant. What is relevant is that Bryant admitted to intentionally firing a deadly weapon multiple times in the direction of a minivan that he knew was occupied

10

by someone. As a self-proclaimed trained firearms user, Bryant would have known that by pointing and shooting a firearm in the general direction of the minivan, the fired bullets would travel in that direction and possibly strike the minivan, its occupants, or someone else nearby. In other words, Bryant was necessarily aware that his conduct could have caused someone physical harm. Accordingly, when viewing the evidence in the light most favorable to the State, the evidence established that Bryant intentionally fired a deadly weapon in a place where there was risk of injury to one or more persons. The evidence supported the inference that Bryant knowingly attempted to cause physical harm to another. Bryant's claim that there was insufficient evidence establishing that he knowingly attempted to cause physical harm to the occupants of the minivan lacks merit.

{¶ 27} After reviewing the entire record and weighing all the evidence and reasonable inferences, we also find that the jury did not lose its way or create a manifest miscarriage of justice by finding Bryant guilty of the three felonious assault counts. The weight of the evidence supported the jury's guilty verdicts on those counts. In addition to being supported by sufficient evidence, Bryant's felonious assault convictions were not against the manifest weight of the evidence.

{¶ 28} Bryant's first and second assignments of error are overruled.

### Third Assignment of Error

{¶ 29} Under his third assignment of error, Bryant challenges the trial court's decision to impose consecutive prison terms for all three of his firearm specifications. Bryant claims that the trial court should have instead ordered consecutive service for only two of the firearm specifications and that the third firearm specification should have been imposed concurrently. We agree.

11

**{¶ 30}** When reviewing felony sentences, we must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 7. Under this statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes, or (2) the sentence is otherwise contrary to law. *Id*. at ¶ 9, citing R.C. 2953.08(G)(2). As relevant here, the phrase "otherwise contrary to law" means ""in violation of statute or legal regulations at a given time."" *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990).

*Relevant Law*

**{¶ 31}** "R.C. 2929.14(B)(1) governs the imposition of prison terms for firearm specifications connected to felony offenses." *State v. Beatty*, 2024-Ohio-5684, ¶ 10. It provides that "if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a [firearm] specification . . . the court shall impose" a prison term for that specification. R.C. 2929.14(B)(1)(a). The statute also provides that a trial court "shall not impose more than one prison term on an offender under [R.C. 2929.14(B)(1)(a)] for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(b). However, under R.C. 2929.14(B)(1)(g), there is an exception to that prohibition, which provides as follows:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type

12

described under division (B)(1)(a) of this section in connection with two or more of the felonies, *the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.*

(Emphasis added.)

{¶ 32} The foregoing statutory language indicates that "if an offender is convicted of a group of offenses and firearm specifications that were all part of the same transaction, the trial court must impose one prison term for the firearm specifications and it must not impose prison terms for any other firearm specifications." *Beatty* at ¶ 10. "But if any of the offenses is a serious felony such as murder or felonious assault, the trial court *must* impose prison terms for two of the firearm specifications and it *may* impose prison terms for any remaining firearm specifications." (Emphasis in original.) *Id*. "Because the trial court 'must' impose prison terms for two of the firearm specifications, those prison terms are 'mandatory prison term[s],' which are defined as 'the term[s] in prison that must be imposed for the offenses or circumstances set forth in . . . [R.C. 2929.14(B)].'" (Bracketed text in original.) *Id*., quoting R.C. 2929.01(X)(1). "And because the trial court 'may' impose prison terms for the remaining firearm specifications, those prison terms are not 'mandatory prison term[s].'" (Bracketed text in original.) *Id*.

{¶ 33} Under R.C. 2929.41(A), there is a general presumption that prison sentences will be served concurrently to one another. There are, however, exceptions to that

13

presumption. As relevant here, R.C. 2929.14(C)(1)(a) provides the following exception pertaining to firearm specifications:

Subject to [R.C. 2929.14(C)(1)(b)], if a mandatory prison term is imposed upon an offender pursuant to [R.C. 2929.14(B)(1)(a)] for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to [R.C. 2929.14(B)(1)(c)] for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under [R.C. 2929.14(B)(1)(d)], consecutively to and prior to any prison term imposed for the underlying felony pursuant to [R.C. 2929.14(A), (B)(2), or (B)(3)] or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 34} The language in R.C. 2929.14(C)(1)(a) indicates that "if a court imposes a 'mandatory prison term' for a firearm specification, it must be served consecutively to any other 'mandatory prison term' imposed for the enumerated specifications and consecutively to the prison term for the underlying felony to which the specification is attached." *Beatty,* 2024-Ohio-5684, at ¶ 12.

{¶ 35} In *Beatty*, the Supreme Court of Ohio found that R.C. 2929.14(C)(4)—the statute that governs consecutive sentences for *felony offenses*—does not provide an exception to the presumption of concurrent sentences in R.C. 2929.41(A) regarding prison terms for any firearm specifications, including those that were imposed at the trial court's

14

discretion. *Id*. at ¶ 23. Instead, the Supreme Court found that R.C. 2929.14(C)(1)(a) was "[t]he only statutory provision allowing for consecutive prison terms for firearm specifications" and that it only applied to "mandatory prison terms" and "therefore does not apply to prison terms imposed at the trial court's discretion under R.C. 2929.14(B)(1)(g)." *Id*. at ¶ 26. As a result, the court in *Beatty* concluded that "[t]he General Assembly has not given trial courts the power to require that discretionary prison terms for firearm specifications be served consecutively, and therefore, under R.C. 2929.41(A), such prison terms 'shall be served concurrently' with other prison terms." *Id*. at ¶ 27.

{¶ 36} *Beatty* applied the foregoing principles to a case in which the trial court had imposed consecutive prison terms for four firearm specifications that were attached to four felonious assault counts. In accordance with R.C. 2929.14(B)(1)(g), two of those prison terms were mandatory, and two were imposed at the trial court's discretion. The trial court, however, ran all four sentences consecutively to one another. Upon concluding that trial courts do not have the power to order discretionary prison terms for firearm specifications to be served consecutively, the Supreme Court reversed the sentence imposed by the trial court and remanded the matter with instructions for the trial court to "amend its sentence to run the two discretionary prison terms imposed for the firearm specifications concurrently with each other and with the other prison terms imposed." *Id*. at ¶ 29.

{¶ 37} The State argues that *Beatty* is a plurality opinion and is, therefore, not binding authority. However, despite the plurality nature of *Beatty*, this court has agreed with the opinion and applied its holding on several occasions. *See, e.g.*, *State v. Murray*, 2025-Ohio-1485, ¶ 55-59 (2d Dist.); *State v. Jeffers*, 2025-Ohio-989, ¶ 65-73 (2d Dist.); *State v. Hayes*, 2024-Ohio-6046, ¶ 29-33 (2d Dist.).

{¶ 38} Most recently, in *Murray*, the trial court merged two murder and two felonious assault counts and ordered the prison sentences for all the firearm specifications attached to those counts to run consecutively to one another. In reviewing the sentence for the firearm specifications, this court found that the *Beatty* decision "requires us to reverse the trial court's judgment with regard to the sentence imposed on Murray, because the trial court ran the sentence on the third firearm specification consecutively to rather than concurrently with the other prison terms." *Murray* at ¶ 59. We remanded the matter for the trial court to impose a concurrent sentence on the third firearm specification. *Id*.

{¶ 39} Accordingly, we follow this court's precedential case law and apply *Beatty* to the instant matter.

### Analysis

{¶ 40} In this case, Bryant received three prison terms for the firearm specifications that were attached to his three felonious assault counts. Under R.C. 2929.14(B)(1)(g), two of the firearm specifications carry mandatory prison terms, while the prison term for the third firearm specification is discretionary. And under R.C. 2929.14(C)(1)(a), only the two firearm specifications carrying mandatory prison terms were subject to consecutive sentencing. As discussed in *Beatty*, the trial court did not have statutory authority to order consecutive service for the third firearm specification that carried a discretionary prison term. As a result, the trial court's decision to impose consecutive sentences for all three of Bryant's firearm specifications is contrary to law.

{¶ 41} Bryant's third assignment of error is sustained.

### Fourth Assignment of Error

{¶ 42} Under his fourth assignment of error, Bryant claims that the trial court erred by imposing consecutive prison terms for his three felonious assault counts. Although Bryant

16

concedes that the trial court made the required statutory findings to impose consecutive sentences, he claims that those findings are unsupported by the record. We disagree.

*Standard of Review*

**{¶ 43}** As with the review of the sentences for Bryant's firearm specifications, the standard of review set forth in R.C. 2953.08(G)(2) applies to the review of his sentences for felonious assault. *Marcum*, 2016-Ohio-1002, at ¶ 7. Again, this statute provides that "an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which addresses consecutive sentences); or (2) the sentence is otherwise contrary to law." *State v. Wells*, 2024-Ohio-4813, ¶ 45 (2d Dist.), citing *Marcum* at ¶ 9 and R.C. 2953.08(G)(2).

*Consecutive Sentencing*

**{¶ 44}** "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). However, "trial courts may impose consecutive sentences when a law specifically permits them to do so." *State v. Barber*, 2025-Ohio-5061, ¶ 51 (2d Dist.), citing *Glover* at ¶ 38. One law that permits the imposition of consecutive sentences is R.C. 2929.14(C)(4). *Glover* at ¶ 38.

**{¶ 45}** R.C. 2929.14(C)(4) permits consecutive sentences if the trial court finds that (1) consecutive service is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one or more of the following three findings is made:

17

(a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)   At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)   The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 46} To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, syllabus. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. at ¶ 29.

{¶ 47} Under R.C. 2953.08(G)(2), "where a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the

record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, ¶ 38 (2d Dist.). This is a deferential standard of review that prohibits an appellate court from simply substituting its judgment for that of the trial court. *State v. Gwynne*, 2023-Ohio-3851, ¶ 15. "[T]he consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result." *Withrow* at ¶ 39.

*Analysis*

**{¶ 48}** In this case, there is no dispute that the trial court made all the required consecutive-sentence findings at the sentencing hearing and incorporated those findings into the sentencing entry. Bryant, however, claims that the trial court's finding under division (2) of the statute—i.e., that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public—is not supported by the record.

**{¶ 49}** The Supreme Court of Ohio has recognized that "[t]he proportionality requirement is phrased in the negative" and that "R.C. 2929.14(C) does not require that the trial court find that consecutive sentences are proportionate to the seriousness of the defendant's conduct and the danger he poses to the public before it may impose consecutive sentences. Instead, it requires that the trial court find that consecutive sentences 'are not disproportionate' to the defendant's conduct and the danger he poses." *Glover*, 2024-Ohio-5195, at ¶ 52, quoting R.C. 2929.14(C)(4).

**{¶ 50}** The Supreme Court has further recognized that "[t]he appellate-review statute then adds another negative: the appellate court may not reverse simply because it determines that a trial court's proportionality finding is not supported by the record. Rather, it may modify or vacate only when it finds that the record 'clearly and convincingly' 'does *not* support' the trial court's finding that consecutive sentences are not disproportionate."

19

(Emphasis in original.) *Id*., quoting R.C. 2953.08(G)(2)(a). "The negative constructions in both statutes combined with the clear-and-convincing standard constrain the appellate court's review of a trial court's proportionality finding." *Id*.

{¶ 51} In this case, we cannot say that the record clearly and convincingly does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of Bryant's conduct. The record established that Bryant admitted to firing his weapon at an unmarked minivan in an apartment complex while the minivan was traveling at a typical speed. Bryant admitted that he did not know who was inside the minivan and acknowledged that it could have been occupied by a family with children. Despite this, Bryant fired two shots at the minivan without hesitation. His conduct showed a complete disregard for the lives of all the individuals who were in or near the minivan. Accordingly, the trial court's finding that consecutive sentences are not disproportionate to the seriousness of Bryant's conduct is not clearly and convincingly unsupported by the record.

{¶ 52} Bryant also argues that the trial court's finding under division (3)(b) of R.C. 2929.14(C)(4) was unsupported by the record. This portion of the statute required the trial court to find that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflected the seriousness of Bryant's conduct.

{¶ 53} Upon review, we cannot say that the record clearly and convincingly fails to support the trial court's finding under division (3)(b) of the statute. Although no one was physically injured during the incident, the trial court could have considered the trauma and psychological harm the three detectives experienced as a result of Bryant shooting at them. The trial court also could have considered the psychological harm that the residents of

Bryant's apartment complex may have experienced, as the shooting incident may have caused residents to feel unsafe in their neighborhood.

{¶ 54} We note that "'even a record that is largely silent is not clearly and convincingly contrary to a trial court's consecutive-sentencing determination unless there is substantial affirmative factual information in support of the defendant to conclude that the trial court is clearly wrong.'" *Withrow*, 2016-Ohio-2884, at ¶ 40 (2d Dist.), quoting *State v. Kay*, 2015-Ohio-4403 at ¶ 27 (Hall, J., dissenting). That is not the case here. While the factual information in the record indicates that the trial court's great or unusual harm finding may be debatable, we cannot say that the finding is clearly wrong or overwhelmingly unsupported by the record so as to warrant reversal of Bryant's consecutive sentences.

{¶ 55} Bryant's fourth assignment of error is overruled.

### Fifth Assignment of Error

{¶ 56} Under his fifth assignment of error, Bryant claims that the trial court's sentencing judgment is contrary to law because the trial court's decision to impose maximum, consecutive sentences was vindictive and meant to punish him for exercising his right to a jury trial. We again disagree.

{¶ 57} "There is no question . . . that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *State v. Rahab*, 2017-Ohio-1401, ¶ 8, citing *State v. O'Dell*, 45 Ohio St.3d 140, 147 (1989). "An appellate court may reverse a sentence for vindictiveness only if, after review of the entire record, it finds clearly and convincingly that the sentence was based on actual vindictiveness." *Id*. at ¶ 33.

{¶ 58} Bryant concedes that the trial court did not expressly say anything that evidences actual vindictiveness. However, he claims that the trial court's imposition of maximum, consecutive sentences—despite his expression of remorse and minimal criminal

21

record—shows vindictiveness. Bryant also takes issue with the trial court not reviewing a presentence investigation report ("PSI") or victim impact statement prior to sentencing. He further claims that the trial court's decision to impose a sentence greater than the one recommended by the State demonstrates vindictiveness. Bryant adds that the timing of the sentencing hearing, which occurred four months after the jury returned its guilty verdicts, evidences vindictiveness.

{¶ 59} Upon review, we find Bryant's arguments unpersuasive. Although the record establishes that Bryant expressed remorse for his conduct, the trial court was in the best position to weigh Bryant's credibility in that regard and may have found it lacking. Also, the trial court may have given Bryant's lack of criminal history little weight because of the abrupt and severe escalation of his conduct when he fired at the minivan. Indeed, the record indicates that the trial court based its imposition of maximum, consecutive sentences primarily on Bryant's extreme disregard for human life.

{¶ 60} The trial court's failure to review a PSI is immaterial, as a PSI was not required in this case and Bryant never requested one. *See* Crim.R. 32.2 (requiring a PSI only as a prerequisite to imposing community control sanctions or granting probation). The trial court's failure to review a victim impact statement is also immaterial because no such statement was necessary for the trial court to understand the severity of Bryant's conduct. The trial court heard all the testimony and evidence regarding how Bryant fired twice on a family-style minivan in a residential area without knowing who was inside. The trial court saw how the three detectives in the minivan were taken off guard and put in danger by Bryant's violent conduct.

{¶ 61} The State's recommendation of a shorter sentence is also immaterial. The Supreme Court of Ohio has recognized that "there is no presumption of vindictiveness when,

after trial, a court sentences a defendant to a longer term than was offered by the state in plea negotiations." *Id*. at ¶ 33. We also fail to see how the delay in holding the sentencing hearing shows any vindictiveness by the trial court.

**{¶ 62}** Having reviewed the record in this case, we find nothing establishing that the trial court vindictively sentenced Bryant for taking his case to trial. We do not clearly and convincingly find that the trial court's decision to impose maximum, consecutive sentences was based on actual vindictiveness.

**{¶ 63}** Bryant's fifth assignment of error is overruled.

## Conclusion

**{¶ 64}** Having sustained Bryant's third assignment of error, the trial court's judgment is reversed in part, and the matter is remanded to the trial court for the sole purpose of imposing a concurrent sentence on his third firearm specification to yield an aggregate sentence of 30 to 34 years in prison. Having overruled Bryant's remaining assignments of error, the judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.